833 So.2d 1103 (2002)
STATE of Louisiana, Appellee
v.
Jennifer Denise QUIAMBAO, Appellant.
No. 36,587-KA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
Rehearing Denied January 23, 2003.
*1104 Wilson Rambo, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, David O'Brian Harkins, Jr., Assistant District Attorney, for Appellee.
Before BROWN, CARAWAY and HARRISON (Pro Tempore), JJ.
HARRISON, Judge Pro Tempore.
The defendant, Jennifer Denise Quiambao, was indicted for manslaughter in the *1105 stabbing death of her former husband, Arturo "Bobby" Quiambao. She admitted the stabbing in statements to sheriff's deputies shortly after the incident. Before trial, the district court ruled that the State could introduce evidence of two prior incidents in which she stabbed or threatened to stab Bobby. The jury rejected her claim of self defense and, by a 10-2 vote, found her guilty as charged. The district court denied her motion for new trial, rejecting her claim of jury misconduct. The court sentenced her to 20 years at hard labor with credit for time served. The defendant now appeals, urging five assignments of error. We affirm.

Factual and procedural background
Late on the evening of October 15, 1999, Ouachita Parish sheriff's deputies received a dispatch to a house on Keystone Road in northern Ouachita Parish. On arrival, deputies found EMS personnel trying to aid the victim, Bobby Quiambao, who was bleeding profusely on the living room floor. Deputies spoke to Casundra Downs, who had placed the 911 call, and to Mr. and Mrs. Marler, who owned the home, and learned that the Marlers' daughter, Jennifer Quiambao, had stabbed Bobby with a kitchen knife. Deputies found Jennifer in a bathroom and advised her of her Miranda rights. Jennifer admitted stabbing Bobby, her ex-husband, and agreed to go to the sheriff's department to make a full statement.
In her statement, which was transcribed and read to the jury at trial, Jennifer disclosed that she and Bobby had been divorced for about two years. Jennifer was living with her parents, the Marlers, along with her two children with Bobby and another child from a prior marriage. The day before the incident, Bobby had returned from working offshore and spent the night on the living room couch as he often did when visiting his children. Jennifer described Bobby as "OK as long as he ain't drinking," but on the date of the incident he started drinking around noon. When Jennifer got home from work around 7:30, Bobby was drunk, "doing stupid things" like trying to kiss on her and singing. She told him to calm down, and then left with her friend, Ms. Downs, to ride around for a while. When they returned, Bobby started yelling at Jennifer, "messing with" her, screaming at her, saying nasty things; she hit him in the face with her fist and told him to sober up. Undeterred, he continued shouting at her and followed her into the kitchen, where he hit her between her legs and called her a whore. She grabbed a butcher knife from the sink and threatened him. "Every time [we] get into a fight, I'll threaten him like that and usually he'll leave me alone." This time, however, things got out of control; she did not think she had hit him until she saw blood gushing out. When he stopped breathing, she tried to give him mouth-to-mouth resuscitation.
After taking Jennifer's statement, deputies learned that Bobby had died at North Monroe hospital. Dr. Steven Hayne, the forensic pathologist who examined the body, testified that the cause of death was a stab wound some six inches deep to the left side of the chest, resulting in massive blood loss. This was consistent with an assailant standing in front of the victim and delivering the blow with her right hand.
Casundra Downs, who had been out riding with Jennifer before this incident, confirmed that Bobby's screams and taunts made Jennifer angry. She admitted that Jennifer landed the first blow, slapping Bobby in the living room; however, she thought Jennifer was defending herself when she stabbed him.
By contrast, Deputy Anthony Washington, who Mirandized Jennifer and participated *1106 in both of her statements, testified that she never said that Bobby had threatened her or she was in fear of her life. Deputy Talmadge Stutts, who led the investigation, testified that Mrs. Marler and Jennifer's 11-year-old son corroborated Jennifer's account of the incident.
The defense introduced photos taken the day after Jennifer's arrest, allegedly showing scratches and lacerations on her right forearm. Robert Kelly, the Richwood Chief of Police and a licensed private investigator, testified that these were defensive wounds. On cross examination, however, he admitted they could have resulted from striking someone with the right arm. Dr. Lawrence Hill, who examined Jennifer at the Ouachita Parish Correctional Center, testified that he noticed only a bruise on the inside of her right wrist. He agreed that this could "potentially" have resulted from an offensive or defensive blow, but that such injuries were normally on the outside of the arm.
Four days before trial was set to begin, the State filed a notice of intent to use other crimes evidence. At the Prieur hearing, Deputy David Coutcher testified that in October 1994 he had been called to the Marlers' house to investigate a domestic disturbance. Jennifer admitted she chased Bobby around with a steak knife, accusing him of an affair with her 15-year-old niece. Jennifer was not arrested for that incident. One of Bobby's sisters, Laura Ansardi, testified that she was there and saw it happen.
Bobby's other two sisters, Teresa Dallimore and Renee Girault, testified that on an occasion in May 1999, Jennifer boasted that she had stabbed Bobby in December a year and a half earlier. Ms. Dallimore testified that the wound was in the back and required a few stitches.
The district court ruled that the two prior incidents were admissible under La. C.E. art. 404 B. At trial, these witnesses reiterated their testimony from the Prieur hearing. Ms. Dallimore and Ms. Girault added that in May 1999, Jennifer had said, "If he pisses me off again, I'll do it again. Next time I'll do it right." Another witness, Jennifer's sister Dana Marler, testified that she once saw Bobby "on top of" Jennifer, hitting her.
The case proceeded to trial in August 2001. As noted, the jury found Jennifer guilty of manslaughter by a vote of 10-2. The defense filed a motion for new trial, alleging jury misconduct; the court denied it. The court sentenced her to 20 years at hard labor with credit for time served and denied a timely motion for reconsideration. Jennifer now appeals.

Discussion: Sufficiency of the evidence
By her first assignment, Jennifer urges the evidence was insufficient to sustain the conviction of manslaughter. She concedes that she stabbed Bobby, but contends that it was in self defense. She argues that Bobby provoked the stabbing and was the instigator, leaving her no reasonable choice other than to defend herself. She also cites the testimony of Mr. Kelly, the private investigator, to show that wounds on her right forearm could be construed as defensive. By supplemental brief, she also contends that the use of deadly force was justified as she was entitled to compel an intruder to leave her residence pursuant to La. R.S. 14:20(3) and (4).
The standard of review for a claim of sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560; State v. Marcantel, 00-1629 (La.4/3/02), *1107 815 So.2d 50. This objective standard applies to all evidence, direct and circumstantial, for reasonable doubt. State v. Marcantel, supra; State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78; State v. Owens, 30,903 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. Moreover, the reviewing court must defer to the trier of fact's rational credibility calls, evidence weighing and inference drawing. State v. Mussall, 523 So.2d 1305 (La.1988). It is not the function of the appellate court to assess credibility or re-weigh evidence. State v. Marcantel, supra; State v. Rosiere, 488 So.2d 965 (La.1986).
In State v. Hudson, 33,357 (La.App. 2 Cir. 5/10/00), 760 So.2d 591, this court set forth the law of manslaughter:
Manslaughter is a "homicide which would be [first or second degree murder], but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. R.S. 14:31 A(1).
Self-defense is justification for a killing only if the person committing the homicide reasonably believes he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. La. R.S. 14:20(1); State v. Cotton, 25,940 (La.App. 2 Cir. 3/30/94), 634 So.2d 937; State v. Jones, 600 So.2d 875 (La.App. 1 Cir.1992), writ denied, 92-2351 (La.5/12/95), 654 So.2d 346. The state has the affirmative duty of proving beyond a reasonable doubt that the killing was not in self-defense. State v. Arnold, 30,282 (La.App. 2 Cir. 1/21/98), 706 So.2d 578.
For a homicide to be justified, the offender must have had a reasonable belief he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary, under the circumstances, to save himself from the danger. La. R.S. 14:20(1); State v. Dozier, 553 So.2d 911 (La.App. 4 Cir.1989), writ denied, 558 So.2d 568 ([La.]1990).
Factors to consider in determining whether a defendant had a reasonable belief the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing and the defendant's knowledge of the assailant's bad character. State v. Hardeman, 467 So.2d 1163 (La.App. 2 Cir.1985). Although there is no unqualified duty to retreat, the possibility of escape is a factor to consider in determining whether a defendant had a reasonable belief that the use of deadly force was necessary to avoid the danger. State v. Brown, 414 So.2d 726 (La.1982).
When a defendant in a homicide case claims self-defense, the state has the burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986); State v. Flowers, 574 So.2d 448 (La.App. 2 Cir.), writ denied, 580 So.2d 666 (La.1991).
We have closely reviewed the evidence. Bobby strongly provoked Jennifer by shouting at her and calling her offensive names. However, Jennifer inflicted the first physical blow, and in her statement she admitted striking him more than once. He provoked her further by hitting her between the legs. Jennifer brandished the knife and threatened him; according to her recorded statement, after this type of threat, he would "usually" leave her alone. By her own admission, everything "got out of control," and she did not realize she had stabbed him until she saw gushing blood. Viewed in the light most favorable to the *1108 State, this conduct was the result of provocation that deprived Jennifer of her self-control and cool reflection. La. R.S. 14:31 A(1).
Moreover, there is nothing in her recorded statement to suggest that Jennifer rationally believed she was in danger of death or great bodily harm, a point noted by Dep. Washington. She indicated that confrontations like this were not uncommon, and ended harmlessly. Ms. Downs testified that Jennifer appeared to be defending herself, but she did not witness the actual stabbing. Mr. Kelly, the investigator, theorized that scratches and abrasions on Jennifer's right forearm were defensive, but he admitted they could also have been offensive. By contrast, Dr. Hill testified that the only bruise he noted on her arm was not really consistent with a striking motion. Viewed in the light most favorable to the State, this evidence shows beyond a reasonable doubt that Jennifer did not act out of a rational belief that she was in danger of death or great bodily harm. La. R.S. 14:20(1).
Finally, Jennifer contends by supplemental brief that the homicide was justified under R.S. 14:20(3) and (4). Subsection (3) does not apply as there is no evidence that Bobby was "committing or attempting to commit a burglary or robbery" of Jennifer's parents' home. State v. Guillot, 470 So.2d 360 (La.App. 5 Cir.), writ denied, 476 So.2d 347 (La.1985). Subsection (4) does not apply as there is no evidence that Bobby was "attempting to make an unlawful entry into the dwelling." He had spent the night there with the permission of Jennifer and her parents.
For these reasons, this assignment of error lacks merit.

Other crimes evidence
By her second assignment Jennifer urges the district court erred in admitting evidence of other crimes under La. C.E. art. 404 B. She contends that the State offered the testimony of Bobby's three sisters solely to show that Jennifer is a bad person, rather than to show that the stabbing death was not an accident. She concludes that their testimony was highly prejudicial and outweighed any probative value it may have had.
The State counters that evidence of other threats and attacks on the victim were relevant to show Jennifer's motive, intent, absence of mistake or accident, and state of mind. Intent was a crucial issue, the State urges, because Jennifer was convicted of manslaughter, a specific intent crime.
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person "in order to show that he acted in conformity therewith." La. C.E. art. 404 B. However, such evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." Id. The State must prove by clear and convincing evidence that the defendant committed the other crimes. State v. Jackson, 625 So.2d 146 (La.1993). Even if the evidence is independently relevant, it may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403; State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960. A district court's decision to admit or exclude evidence of other crimes will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326; State v. Blackwell, 30,281 (La. App. 2 Cir. 11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.2/13/98), 709 So.2d 755.
*1109 As noted, R.S. 14:31 A(1) defines manslaughter as a homicide that would be first or second degree murder but is committed in sudden passion or heat of blood caused by provocation sufficient to deprive an average person of his self-control and cool reflection. As with first and second degree murder, manslaughter requires proof of specific intent. State v. Harris, 00-3459 (La.2/26/02), 812 So.2d 612, and citations therein.
Jennifer does not contend that the State failed to prove by clear and convincing evidence that she threatened Bobby with a knife in late 1994, stabbed him in late 1997, and boasted that she would "do it again" and "do it right" in May 1999. The only issues are whether the evidence of these prior bad acts was relevant to prove something other than her bad character and whether its probative value outweighed its prejudicial effect.
We perceive no abuse of the district court's discretion. Jennifer was charged with manslaughter for the stabbing death of her ex-husband; her defense was that the stabbing was either accidental or in self-defense. The evidence of her prior conduct shows clearly and convincingly her propensity to brandish a knife in situations with Bobby. This supports a finding of lack of mistake or accident. Her comments in May 1999 support a finding of motive and intent. This evidence was relevant and probative under C.E. art. 404 B. Moreover, the district court gave a limiting instruction that the defendant could not be convicted for any crime other than the one charged or a responsive offense. State v. Maise, 00-1158 (La.1/15/02), 805 So.2d 1141; State v. Prieur, 277 So.2d 126 (La. 1973).
Finally, Jennifer contends that the State did not provide timely notice under State v. Prieur, supra. However, she has not shown any prejudice arising from the State's somewhat tardy notice, specifically that it would have altered her trial strategy. State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996); State v. Free, 26,267 (La.App. 2 Cir. 9/21/94), 643 So.2d 767, writ denied, 94-2846 (La.3/10/95), 650 So.2d 1175. Thus we find no reversible error.

Motion for new trial
By her third assignment Jennifer urges the district court erred in denying her motion for new trial. Specifically, she contends the court should have allowed the jury foreman, Thomas Foster, to testify about his complaints of jury misconduct. About six weeks after trial, defense counsel received a letter from Foster alleging, inter alia, that individual jurors were discussing the facts of the case during breaks in the trial, contrary to the court's instructions and before they received the case for deliberation. After extensive argument, the court denied the motion for new trial.
A member of the jury is generally disqualified as a witness. La. C.E. art. 606 A. Subsection B further provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon him or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded *1110 from testifying be received for these purposes.
The jurors' discussion of the facts among themselves, although in violation of the trial court's instructions, was not shown to inject into the proceedings any outside influence or extraneous prejudicial information. The district court was not plainly wrong to find that the jury foreman's letter does not meet the exception of art. 606 B and to exclude his testimony. State v. Graham, 422 So.2d 123 (La.1982), cert. dismissed, 461 U.S. 950, 103 S.Ct. 2419, 77 L.Ed.2d 1309; State v. Horne, 28,327 (La.App. 2 Cir. 8/21/96), 679 So.2d 953, writ denied, 96-2345 (La.2/21/97), 688 So.2d 521.
The denial of a motion for new trial is not subject to appellate review except for error of law. La.C.Cr.P. art. 858; State v. Horne, supra. The decision to grant or deny a new trial rests in the sound discretion of the trial court. State v. Brisban, 00-3437 (La.2/26/02), 809 So.2d 923. Generally, a motion for new trial will be denied unless the defendant establishes that she has suffered some injustice. La. C.Cr.P. art. 851; State v. Burrell, 561 So.2d 692 (La.1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991); State v. Horne, supra.
At the instant hearing, the court considered the jury foreman's letter in its entirety; despite the vigorous argument of counsel, the court found that Jennifer received a fair trial. In light of the finding that no outside influence or prejudicial extraneous information influenced the jury, we perceive no abuse of the court's discretion. This assignment lacks merit.

Excessive sentence
By her fourth and fifth assignments, Jennifer urges the district court imposed an excessive sentence of 20 years at hard labor and erred in denying her motion to reconsider sentence. She specifically contends that the court did not give adequate consideration to her first felony offender status, the hardship that imprisonment would visit upon her three young children, and the fact that Bobby instigated the situation and could have retreated at any time. She also argues that legitimate societal goals could be accomplished by a shorter sentence.
Appellate review of sentences for excessiveness is two-pronged. First the record must show that the sentencing court considered the criteria of La.C.Cr.P. art. 894.1. The court is not required to list every aggravating and mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2 Cir. 6/24/98), 715 So.2d 641. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The article does not require the court to assign any particular weight to any specific matters at sentencing. State v. Jones, 33,111 (La.App. 2 Cir. 3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Here, the court stated that it had read the PSI as well as letters on behalf of and against Jennifer. The court listed every relevant aggravating factor: her clean felony record, but a conviction for DWI, some complaints of battery, and a DWI arrest after the instant offense; investigation for child neglect; history of drinking; history of attacks against this victim; use of a dangerous weapon; fact that she was the aggressor in this offense. The court then noted mitigating factors: she had attempted CPR on the victim; she had three young children. The court also reviewed sentences given to other mothers, as well *1111 as the implication of the 85% rule under La. R.S. 15:574.4 B. Because the court thoroughly considered each relevant factor, we cannot say it abused its discretion in failing to assign more weight to the mitigating factors cited in brief.
The second prong is constitutional excessiveness. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158.
The penalty for manslaughter is imprisonment at hard labor for not more than 40 years. La. R.S. 14:31 B. The instant sentence of 20 years does not shock our sense of justice. See, State v. Walker, 29,877 (La.App. 2 Cir. 10/29/97), 702 So.2d 18. It is tailored to the offense and the offender, serves acceptable penal goals, and is comparable with sentences for similar offenses. See, State v. Harris, 97-0300 (La.4/14/98), 711 So.2d 266; State v. George, 33,859 (La.App. 2 Cir. 9/27/00), 768 So.2d 748, writ denied, 00-2806 (La.9/14/01), 796 So.2d 674.
These assignments lack merit.

Conclusion
We have reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2). For the reasons expressed, Jennifer Denise Quiambao's conviction and sentence are affirmed.
AFFIRMED.
CARAWAY, J., dissenting.
I respectfully dissent because of the trial court's error regarding the other crimes evidence. I would reverse the conviction and remand for a new trial.
In State v. Kennedy, XXXX-XXXX (La.4/3/01), 803 So.2d 916, the supreme court ruled that when specific intent is not an element of the crime, evidence of other crimes or bad acts under La. C.E. art. 404(B) is inadmissible. The manslaughter in this case falls, in my opinion, under La. R.S. 14:31(A)(2), the so-called felony manslaughter or involuntary manslaughter statute. It was "a homicide committed, without any intent to cause death or great bodily harm," while the defendant was engaged in an aggravated battery against the victim. Such aggravated battery committed under those circumstances is itself a general intent crime since it is "committed upon proof that the accused voluntarily did the act." State v. Brumfield, 329 So.2d 181, 190 (La.1976); State v. Howard, 94-0023 (La.6/3/94), 638 So.2d 216.
The manslaughter conviction in this case does not fall under La. R.S. 14:31(A)(1), the so-called "heat of blood" manslaughter. Manslaughter under that section is "a specific intent killing." State v. Tompkins, 403 So.2d 644 (La.1981). The state's evidence in this case, in my opinion, was insufficient to prove a specific intent to kill or inflict great bodily harm. In any event, although the jurisprudence requires proof of specific intent for that element of such manslaughter, the defendant's intent is affected and mitigated by "heat of blood" or "sudden passion" which causes an average person to lose his self-control. Thus, it is difficult for me to find significant relevance in the evidence of the prior knife incidences since no issue of similar motive or intent is present when the defendant has lost self-control.
*1112 On the other hand, the state's evidence of these "other crimes" was clearly prejudicial. This was particularly true because the circumstances of those prior "crimes" were not fully detailed by the state. The issue of self-defense may have been present in those cases. For the charged offense, the state had the burden of proving beyond a reasonable doubt that the act was not committed in self-defense. State v. Hudson, 33,357 (La.App.2d Cir.5/10/00), 760 So.2d 591. Yet, for these "other crimes," the state merely raised the specter of the defendant's bad acts whether self-defense was present or not. This leaves the accused defending not just for the charged offense, but for many other incidents where the victim may have inflicted more harm than the blow to the groin which he gave the defendant in this case. In accordance with Article 403 of the Code of Evidence, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the damage of unfair prejudice, confusion of the issues, or misleading the jury...."
The problem with the Kennedy ruling is that the defendant may be charged, as here, with multiple grades of crimes or with a single crime that may be proven in multiple ways. One charge may contain an element of proof requiring evidence of specific intent, while another may be only a general intent crime. Here, while the state could attempt to establish manslaughter in two manners, only felony manslaughter, a general intent crime, was established by the evidence. Thus, the "other crimes" evidence allowed by the trial court for proof of this general intent crime should be impermissible under Kennedy regardless of the multiple manners in which manslaughter may be proven. The prejudice was not harmless error. I would reverse the conviction and remand for new trial.

APPLICATION FOR REHEARING
Before BROWN, C.J., STEWART, CARAWAY, KOSTELKA, and HARRISON, JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.