938 So.2d 1066 (2006)
STATE of Louisiana, Appellee
v.
Ronald HODGE, Appellant.
No. 41,097-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2006.
*1068 Sam L. Jenkins, Jr., Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Dale G. Cox, Bill Edwards, Dhu Thompson, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS and MOORE, JJ.
MOORE, J.
Ronald Hodge was indicted for the second degree murder of his brother, Alonzo Hodge, and the attempted second degree murder of Bridget Renee Webb. He waived trial by jury and elected a bench trial. After finding him guilty of manslaughter and attempted manslaughter, the court sentenced him to concurrent terms of 22 and 8 years at hard labor. Hodge now appeals, urging the evidence was insufficient to support the convictions and that the manslaughter sentence is excessive. We affirm.

Factual Background
The shootings occurred shortly after midnight on July 27, 2003, in the carport of his girlfriend's house on Terrell Drive in *1069 the Eden Gardens area of Shreveport. The incident began hours earlier, however, at the house that Hodge and his brother shared around the corner on Cornelious Drive.
Hodge testified that when he got home from work on the evening of July 26, his unemployed brother Alonzo and Alonzo's friend Bridget were there, and the house smelled of crack cocaine. Hodge left and spent several hours at a friend's house; he returned feeling nauseated, and spent a long time in the bathroom. While he was indisposed, his girlfriend Deborah came over and asked through the closed bathroom door if she could borrow some money so Alonzo could take her to the store; Hodge told her to wait until he was finished. When he finally came out, Deborah and Alonzo had gone and his wallet was missing; he had left it in his pants pocket in his bedroom. Moments later, Deborah dropped off Alonzo; Bridget had stayed at the house the whole time.
Hodge asked Alonzo and Bridget about his wallet; they told him that Deborah had it, and suggested that all three should walk over to Deborah's house to get it. They did so, and Deborah denied having it, but Bridget still accused her of taking it; voices were raised. Neighbors confirmed that most of the shouting was between Deborah and Bridget.
Hodge, Alonzo and Bridget walked back to Hodge's house to search for the wallet, to no avail; they then walked back to Deborah's two more times. Deborah loudly protested that she did not take the wallet. Hodge testified that he was feeling tired and ill, and just wanted to find his wallet and go to bed; however, he admitted that on one of the return trips to his house, he armed himself with a 9 mm Ruger pistol. Bridget admitted that she armed herself with a kitchen knife, and it transpired that Alonzo was carrying in his pants pocket a box cutter with an orange plastic sheath. Hodge testified that he knew both of them were armed.
The third time they came to her carport door, Deborah screamed that she did not have Hodge's wallet, and slammed the door. According to Bridget, Hodge told them, "I'm tired of this. All I want is my m***** f****** wallet," and then pulled the gun out of his pants. That was the last thing she remembered. Hodge testified that Alonzo and Bridget had blocked him from leaving the carport; he knew they were both armed and he claimed he saw Alonzo reaching in his pants pocket. Hodge pulled out the Ruger and fired twice, first hitting Alonzo under his right eye, killing him. The second shot hit Bridget, who had turned away, in the side of her face. She sustained serious facial injuries but survived.
Hodge laid the gun on the car in the driveway and then returned to the door, smashing the diamond-shaped window and shouting that he needed to use the phone. Deborah's brother phoned 911. When police arrived, Hodge walked out to meet them, his hands in the air; he told Officer Chris Procell, "I did it. I'll go peaceful."

Procedural History
Hodge was originally indicted for the first degree murder of Alonzo; by amended indictment, he was charged with the second degree murder of Alonzo and the attempted second degree murder of Bridget. As noted, he waived a jury and proceeded to a bench trial in March 2005.
The witnesses described the shootings, and the events that led to them, as outlined above. Bridget testified that she spent about one week in the hospital and still suffers from pain in the face and blurry vision in one eye; however, she signed an affidavit in February 2005 stating that she wished to dismiss and not *1070 prosecute any charges against Hodge. Deborah died of unrelated causes sometime before trial, and obviously did not testify. Several witnesses, including Alonzo's son, testified that Hodge enjoyed a fine reputation for nonviolence.
Hodge argued through counsel that the shootings happened "under circumstances of heat of passion, * * * under circumstances of loss of control, and * * * under circumstances that fit the definition of a manslaughter." The district court agreed, finding him guilty of the manslaughter of Alonzo and the attempted manslaughter of Bridget. The court later sentenced him to concurrent sentences of 22 and 8 years at hard labor.

Discussion: Sufficiency of the Evidence
By his first assignment of error, Hodges urges the state presented insufficient evidence to convict him of manslaughter or attempted manslaughter. His primary contention is that he raised self-defense as an issue, thus shifting to the state the burden of proving that he did not act in self-defense. State v. Dooley, 38,763 (La.App. 2 Cir. 9/22/04), 882 So.2d 731, writ denied, 2004-2645 (La.2/18/05), 896 So.2d 30; State v. Cheatham, 38,413 (La.App. 2 Cir. 6/23/04), 877 So.2d 164, writ denied, 2004-2224 (La.6/24/05), 904 So.2d 717. He submits that his victims had been smoking cocaine all day, were acting erratically and tried to prevent him from leaving Deborah's house; being "cornered" by two armed persons at close quarters, he "reasonably felt he had to resort to means of force to protect his life." He also argues that all witnesses agreed he was not a violent person. Finally, he contends that the record simply does not support a finding that he acted in sudden passion or heat of blood. Instead, he submits, he was cool and reasonable in the effort to locate his missing wallet, and at most frustrated at the situation. He concludes that the only reasonable explanation for his conduct was self-defense.
The state responds that the manslaughter is not limited to "sudden passion killing," La. R.S. 14:31 A(1), but also encompasses homicide committed without intent to cause death or great bodily harm, "when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person." R.S. 14:31 A(2)(a). The state suggests that Hodge was engaged in several unenumerated felonies (aggravated battery, second degree battery, aggravated assault with a firearm), and an intentional misdemeanor directly affecting the person (aggravated assault). The state also shows that Hodge admitted, on cross examination, that Alonzo did not threaten him; moreover, Hodge could not have felt threatened as he was the only person armed with a gun and he was considerably larger than Alonzo. The state concludes that the evidence, viewed in the light most favorable to the prosecution, proved beyond a reasonable doubt that Hodge did not act in self-defense.
The standard of appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the *1071 testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, XXXX-XXXX (La.1/19/06), 921 So.2d 94. The trier of fact may therefore accept or reject, in whole or in part, the testimony of any witness. State v. Updite, 38,423 (La.App. 2 Cir. 6/23/04), 877 So.2d 216, writ denied, XXXX-XXXX (La.11/24/04), 888 So.2d 229, and citations therein.
Self-defense is justification for a killing only if the person committing the homicide reasonably believes he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. La. R.S. 14:20(1); State v. Quiambao, 36,587 (La. App. 2 Cir. 12/11/02), 833 So.2d 1103, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1130. The state has the affirmative duty of proving beyond a reasonable doubt that the killing was not in self-defense. State v. Dooley, supra. Factors to consider in determining whether a defendant had a reasonable belief the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of his assailant's bad character. State v. Hardeman, 467 So.2d 1163 (La.App. 2 Cir.1985).
On close review, we find the state sufficiently disproved Hodge's theory of self-defense. Although Hodge testified he was cornered and thought that Alonzo and Bridget were reaching for their weapons, other evidence cast doubt on this claim. Hodge knew he was the only person with a gun; he was more physically imposing than Alonzo; Alonzo had not threatened him that evening, and Bridget had never done so. Crucially, he admitted he did not actually see either of his victims' weapons. He also described a relationship in which he had taken care of his drug-addicted and unemployed brother, letting him stay in the house and paying his bills; it is unlikely that the dependent Alonzo would have physically threatened his benefactor. One of Deborah's neighbors, Dominique "Nikki" Johnson, confirmed that she overheard no fighting or commotion in the carport immediately prior to the shootings. On this record, we cannot say the district court erred in implicitly rejecting the claim of self-defense.
Moreover, the evidence supports the essential elements of manslaughter and attempted manslaughter. Hodge was even-tempered for most of the evening, but he suddenly felt cornered by two knife-wielding people who had become very agitated. Bridget confirmed that after Deborah denied having the wallet, "this matter was getting serious." Notably, Hodge argued in both opening and closing statements that his conduct fit the definition of manslaughter. On this record, we find that the state proved, beyond a reasonable doubt, that Hodge acted in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. R.S. 14:31 A(1). This assignment of error lacks merit.

Excessive Sentence
By his second assignment, Hodge urges the sentence of 22 years at hard labor for manslaughter was excessive. He contends that certain sentencing factors, La. C. Cr. P. art. 894.1 B, properly considered, warrant a much more lenient sentence:
(23) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm.
(25) There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense.

*1072 (28) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant offense.
(29) The defendant's criminal conduct was the result of circumstances unlikely to recur.
(31) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
(33) Any other relevant mitigating circumstance.
Specifically, Hodge argues that the 22-year sentence is tantamount to life for a 50-year-old like himself; that Alonzo's son wrote a letter asking that Hodge receive a suspended sentence or "time served" for this offense; and that he has been a model prisoner, completing anger management, substance abuse and other adult education classes while at Caddo Correctional Center.
The state responds that the district court articulated reasons for sentence with special attention to the mitigating factors. The state contends that aggravating factors also applied: the crime was without provocation; Hodge knew or should have known his brother was high on crack cocaine and thus vulnerable; he created a risk of death or great bodily harm to more than one person; and he used actual violence, with a 9 mm semi-automatic pistol, in the commission of the offense.
Appellate review of sentences for excessiveness is two-pronged. First the record must show that the sentencing court considered the criteria of C. Cr. P. art. 894.1. The court is not required to list every aggravating and mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Smith, 433 So.2d 688 (La.1983); State v. Quiambao, supra. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lanclos, 419 So.2d 475 (La.1982). The article does not require the court to assign any particular weight to any specific matters at sentencing. State v. Quiambao, supra.
The second prong is constitutional excessiveness. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 92-3120 (La.9/10/93), 623 So.2d 1276; State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158.
The district court cited several mitigating factors: Hodge's lack of any significant criminal history (he had only a misdemeanor conviction for simple battery); his good employment history and community involvement; his remorse for the crimes; the large show of support from his family and friends; his exceptional rehabilitative efforts in jail, including tutoring GED students; and the position of Alonzo's son, who was not opposed to a suspended or "time served" sentence. The court stated, however, that Hodge shot two people "after an evening of argument and flared tempers," and accepted the state's argument that the level of provocation could not alleviate the sentence to any great extent. We find that the district court adequately complied with Art. 894.1, utilizing the relevant factors and providing a factual basis for sentence.
*1073 The penalty for manslaughter is imprisonment at hard labor for not more than 40 years. La. R.S. 14:31 B. The instant sentence of 22 years is in the midrange and is commensurate with sentences for similar offenses. State v. Quiambao, supra; State v. Harris, 97-0300 (La.4/14/98), 711 So.2d 266; State v. George, 33,859 (La.App. 2 Cir. 9/27/00), 768 So.2d 748, writ denied, 2000-2806 (La.9/14/01), 796 So.2d 674. The element of hardship is inevitable for a defendant of Hodge's age, but the sentence is tailored to the offense and the offender, serves acceptable penal goals, and does not shock our sense of justice. This assignment of error lacks merit.

Conclusion
We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, Ronald Hodge's convictions and sentences are affirmed.
AFFIRMED.