SUSAN M. CHEHARDY, Judge.
12Michael Thomas appeals his conviction of manslaughter and the resulting sentence of 23 years. We affirm.
The defendant was indicted by a grand jury for violation of La.R.S. 14:30.1, second degree murder. He entered a plea of not guilty and filed several pre-trial motions, including motions to suppress the evidence, confession, and identification, which were denied after a hearing. After a three-day trial, on January 10, 2007 a 12-member jury found the defendant guilty of the lesser-included offense of manslaughter, by a vote of ten to two. On March 8, 2007, the defendant was sentenced to 23 years’ imprisonment at hard labor.
FACTS
On September 27, 2003, Sergeant A1 West, with the Jefferson Parish Sheriffs Office, responded to a call at an apartment complex at 4200 Lac St. Pierre in Harvey of a black male on the ground with head trauma. When Sergeant West arrived the victim, Chaz Lombard, was already in an ambulance receiving treatment.[1] Sergeant West was advised by the emergency medical technicians that Mr. Lombard was in “bad shape” and “it didn’t appear to be good.” Mr. Lombard |swas transported to the hospital, where he later died of blunt force trauma to the head resulting in a lethal injury to his brain.
Several officers responded to the scene. Deputy Perry Esponge was canvassing the area for witnesses when one witness identified Michael Thomas as the suspect for whom the police were looking. Deputy Esponge approached Thomas, handcuffed him, and advised him of his Miranda rights.[2] He detained the defendant in the back of his police unit for further questioning. While waiting to be questioned, the defendant stated he “hurt that boy, but he was screwing [the defendant’s] wife.”
Upon learning the defendant was being detained in Deputy Esponge’s unit as a suspect, Sergeant West also approached the defendant and advised him of his rights. The defendant waived his rights and told Sergeant West that he was fighting with the victim and began punching him in the head. The defendant was then placed under arrest for attempted murder.[3]
Sergeant West testified he was later called back to the police unit and was *753 advised that the defendant was recanting his initial statement. Sergeant West met with the defendant again, re-advised him of his rights, and asked if he wanted to change his statement. The defendant replied in the affirmative and stated that instead of using his hands, he used an aluminum baseball bat to beat the victim in the head. The defendant then voluntarily led Sergeant West to a second floor bedroom in his apartment, where the baseball bat was recovered.
The defendant was subsequently transported to the Detective Bureau, where he gave a tape-recorded statement. According to his statement, he and the victim had an earlier altercation that day, but had settled their differences. The victim later came over to the defendant’s apartment and the two were talking when they |4got into another fight. The defendant stated he picked up a bat and hit the victim on the shoulder. He explained the fight ended up outside, with the defendant kicking and hitting the victim, and ultimately dragging him to the front of the complex. The defendant recalled hitting the victim twice with the bat. He stated he approached the police when they arrived at the scene and told them he was the person for whom they were looking.
At trial, the defendant corroborated most of his statement and added more details. He explained that right before the incident he told his wife and another man to leave the apartment because they wanted to smoke marijuana. According to the defendant, he and the victim were in the apartment when a man knocked on the door. The victim answered the door and went outside. When he came back, the victim went into the bathroom and the defendant subsequently saw the victim “snorting dope.”
The defendant testified he ordered the victim out of the apartment, at which time the victim told the defendant he needed to worry about bigger things, such as that the victim and another man were “f — ing [his] wife.” The defendant stated the victim refused to leave and kept telling the defendant “me and Warren [f — ing] your old lady.” The defendant testified he “blew up,” hit the victim with the bat, kicked him out the front door, and dragged him to the front lawn.
ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment, the defendant argues the trial court erred in denying his motion for a mistrial when a State witness, Warren Fontenette, testified he was reluctant to testify because he had been threatened. The defendant contends this testimony violated a previous court order prohibiting such testimony and, thus, a mistrial was mandated under La. C.Cr.P. art. 770.
|fiThe State responds the trial court did not make a pre-trial ruling because the State made clear that it did not intend to ask Mr. Fontenette why he did not testify in prior related proceedings. The State further contends Mr. Fontenette’s response was unsolicited and unresponsive and, therefore, cannot be charged against the State. In addition, the State maintains the defendant did not allege that the trial court’s admonishment of the jury to disregard Mr. Fontenette’s statement was insufficient. Finally, the State asserts that at trial the defendant objected to the testimony based on lack of foundation. The State argues a new basis for the objection cannot be raised on appeal.
After the jury had been sworn and dismissed for the day, a hearing was held during which Warren Fontenette testified about threats he allegedly received in connection with the present case. He stated he did not know who was making the *754 threats, but confirmed it was neither the defendant nor the defendant’s attorney. Mr. Fontenette testified he and his wife received calls to the house and explained, “They just call, and they say, when you go to court we’re going to deal with you and hang up the phone.” He elaborated, “They just told us when we leave the courtroom, we’re going to be tooken [sic] care of in the parking lot.” Mr. Fonten-ette stated the threats were received years ago, right after the incident. He admitted he did not report the threats to the police, but maintained he told the D.A. when he talked to him about the case.
Defense counsel moved to strike any statements relating to Mr. Fontenette being threatened. He argued that there was no foundation for the testimony, it was unsupported, and it was highly prejudicial under La.C.E. arts. 401-403. The trial court noted that it was not sure the statements would come out at trial. The State indicated it did not intend to ask Mr. Fon-tenette why he failed to previously | r,appear. The trial court concluded the problem was solved because the State was not going to ask Mr. Fontenette that question.
The next day at trial, Mr. Fontenette took the stand to testify. Toward the end of the State’s direct examination, the following exchange occurred between the prosecutor and Mr. Fontenette:
Q. You didn’t want to come in here and testify, did you?
A. No, sir.
Q. Why is that?
A. It’s just, you know, it’s just a whole lot of stuff I been going through, you know. People calling — I don’t know who calling, you know—
Q. Alright. Alright. Alright.
A. —calling me and threatening me and everything, you know.
Q. That’s alright — ■
The trial judge immediately ordered, “The jury will strike that.” The State then again asked Mr. Fontenette, “But you didn’t want to be here?,” to which Mr. Fontenette responded, “No, sir. I had to come though. That’s the only right thing to do. I had to come.”
Defense counsel immediately requested permission to approach the bench, where he moved for a mistrial outside the jury’s presence, on the basis there was no foundation for Mr. Fontenette’s testimony. He cited La.C.E. art. 401, which defines relevant evidence, and maintained that Mr. Fontenette was unable to say who threatened him or when he was threatened.
The trial court denied the motion for a mistrial, but offered to further instruct the jury, and offered to allow defense counsel to explore the issue with Mr. Fontenette. Defense counsel appeared to decline the trial court’s offer, noting that any additional action would emphasize the problem. Thereafter, two questions were asked on direct examination, and then defense counsel began his cross-examination of Mr. Fontenette. Defense counsel did not ask any questions relating to the threats Mr. Fontenette allegedly received.
[On appeal, the defendant contends a mistrial was mandated because Mr. Fon-tenette’s comment violated a court order.[4] This issue was never argued to the trial court, however. Instead, the basis for the objection at trial was the lack of foundation for Mr. Fontenette to testify about alleged threats, and the relevancy of the testimony.
*755 To preserve the right to seek appellate review of an alleged trial - court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La.C.Cr.P. art. 841. A defendant is limited on appeal to the grounds articulated at trial. A new basis for an objection cannot be raised for the first time on appeal. State v. Gaal, 01-376, p. 17 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 949, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294.
In Gaal, the defendant challenged the trial court’s ruling on motions in limine on the basis the ruling resulted in his being deprived of the right to a fair trial. The trial court’s ruling effectively prevented the defendant from presenting certain evidence. This Court noted that the defendant had timely objected to the trial court’s ruling, but that he raised a different ground for his objection at trial. Specifically, the defendant’s objection at trial was on the basis the evidence he sought to present was relevant. This Court stated that a new ground for an objection cannot be raised for the first time on appeal. However, we went on to address the defendant’s argument, to the extent it challenged the trial court’s ruling on the basis of relevancy of the evidence.
In the present case, the defendant timely objected to Mr. Fontenette’s testimony, but based his objection on the grounds there was no foundation for Mr. Fonten-ette’s remarks. He also referenced La. C.E. art. 401, which defines relevant | ^evidence. In the prior hearing regarding the admissibility of the threats Mr. Fon-tenette allegedly received, the defendant also cited La.C.E. arts. 402 and 403, which relate to the inadmissibility of irrelevant evidence and the exclusion of prejudicial relevant evidence.
A mistrial is a drastic remedy and is warranted only When trial error results in substantial prejudice to a defendant, depriving him of a reasonable expectation of a fair trial. State v. Lagarde, 07-123, pp. 10-11 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113-1114. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. Id. at 11, 960 So.2d at 1114.
Immediately after Mr. Fontenette testified that he had received threats and before defense counsel could object, the trial court instructed the jury to strike his comment. We conclude the trial court determined the comment irrelevant or prejudicial. The issue thus is whether , the irrelevant or prejudicial remark entitled the defendant to a mistrial.
La.C.Cr.P. art. 775 provides for a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized under La.C.Cr.P. arts. 770 or 771. Article 770 provides for a mandatory mistrial when a remark is made, within the hearing of the jury, by the judge, the district attorney, or a court official, and such remark refers to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
*756 |qAs a general rule, Article 770 does not apply to testimony by a State witness, since a witness is not considered a “court official.” However, an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the State and triggers the rule mandating a mistrial. State v. Lagarde, supra at 9-10, 960 So.2d at 1113. Although Mr. Fonten-ette’s statement about receiving threats was arguably elicited by the prosecutor, his comment does not fall within the ambit of Article 770. Specifically, no one alleges Mr. Fontenette’s comment was a reference to other crimes evidence. In addition, his comment did not refer directly to the defendant and was not an unambiguous reference to a crime committed by the defendant.[5]
Rather, Mr. Fontenette’s comment falls under the discretionary mistrial provisions of La.C.Cr.P. art. 771. Article 771 governs those prejudicial remarks made by persons other than the court, district attorney, or court officials and provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
[[Image here]]
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
|inA review of the record shows the trial court instructed the jury to strike Mr. Fontenette’s remark. When defense counsel subsequently moved for a mistrial, he did not request a further admonition. In fact, the trial court offered to further instruct the jury, but defense counsel declined.
The defendant has failed to show he was prejudiced by Mr. Fontenette’s comment.[6] The evidence against the defendant was overwhelming. The defendant admitted at trial that he hit the victim with a baseball bat, and there was no dispute that the victim died of the injuries inflicted by the defendant. We conclude the trial court did not err in denying the motion for a mistrial.
ASSIGNMENT OF ERROR NUMBER TWO
The defendant argues his 23-year sentence for manslaughter was excessive and contends he should have received probation. He asserts the facts do not support the sentence. He points to the facts that he had no prior criminal history, he was a hard working man who supported *757 his family, and he immediately admitted to and accepted responsibility for the incident.
The State responds that the trial court has wide discretion in imposing sentence. It notes that a sentencing hearing was held at which the trial court heard impact testimony from various witnesses. The State maintains the facts support the trial court’s description of the crime as “heinous” and contends the absence of violent offenses in defendant’s record cannot form the basis for declaring a sentence excessive.
The defendant did not file a motion to reconsider sentence in the trial court below, nor did he object at the time of sentencing as required by La.C.Cr.P. art. 881.1. The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the lusentence only for constitutional exces-siveness. State v. Ragas, 07-3, p. 10 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 272, writ denied, 07-1440 (La.1/7/08), 973 So.2d 732.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. Three factors are considered in reviewing a trial court’s sentencing discretion: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. State v. Stewart, 03-920, p. 16 (La.App. 5 Cir. 1/27/04), 866 So.2d 1016, 1027-28, writ denied, 04-449 (La.6/25/04), 876 So.2d 832.
The defendant was charged with second degree murder but was convicted of manslaughter, which has a penalty of not more than 40 years at hard labor. La.R.S. 14:31(B). The defendant received a mid-range sentence of 23 years. At the sentencing hearing, the State offered victim impact statements from the victim’s | ^mother, father and aunt, while defendant offered testimony from his mother, father and great uncle. In sentencing the defendant, the trial judge noted the crime was particularly heinous and explained that defendant “severely beat the victim to death with a baseball bat.” He indicated that he had listened to all the witnesses presented at trial as well as the witnesses who testified at the sentencing hearing. The trial judge remarked that “[a] lesser sentence would deprecate the seriousness of [the] crime.”
The defendant’s sentence is commensurate with similarly situated defendants who have been convicted of manslaughter. In State v. Lathan, 41,855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890, writ denied, 07-805 (La.3/28/08), 978 So.2d 297, the defendant received a 27-year sentence for his man *758 slaughter conviction, which was the defendant’s first felony conviction. The court noted he only had misdemeanor convictions that occurred during the breakup of his marriage 20 years earlier, and also noted the defendant had a work history. The Second Circuit stated that there was no requirement that any specific matter be given any particular weight in determining a defendant’s sentence and concluded the defendant’s sentence was not excessive. Id. at 18,16, 958 So.2d at 899-900.
Also, in State v. Hodge, 41,097 (La.App. 2 Cir. 8/23/06), 938 So.2d 1066, the appellate court found the defendant’s 22-year sentence for manslaughter was not constitutionally excessive. The second circuit noted that the trial court had cited several mitigating factors — the defendant lacked any significant criminal history, had a good employment history and community involvement, and showed remorse for the crimes — but the trial court had also noted the defendant shot two people “ ‘after an evening of argument and flared tempers.’ ” Id. at 9, 938 So.2d at 1072. The trial court concluded “the level of provocation could not alleviate the sentence to any great extent.” Id. The court of appeal found the district court [^“adequately complied with Art. 894.1, utilizing the relevant factors and providing a factual basis for sentence.” Hodge, 41,097 at pp. 9-10, 938 So.2d at 1072.
In State v. Batiste, 07-482 (La.App. 3 Cir. 10/31/07), 969 So.2d 704, the Third Circuit found the defendant’s 20-year sentence for his manslaughter conviction was not excessive despite his being a first offender and his argument that he acted under strong provocation.[7] The court noted the victim had been taunting the defendant and had been picking at the defendant to fight him the entire evening leading up to the incident. Id. at 2, 969 So.2d at 706. In imposing sentence, the trial court focused on the fact the defendant could have walked away but did not. Id. at 3, 969 So.2d at 706.
In State v. Batiste, 06-875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, the Fourth Circuit found a 20-year sentence for the defendant’s manslaughter conviction to be constitutional. The court noted the fight resulting in the victim’s death was the result of “ ‘trash talking’ ” that provoked the shooting and found the sentence was warranted even though the defendant was a first felony offender.
In State v. Couvillion, 05-5 (La.App. 5 Cir. 7/26/05), 910 So.2d 991, this Court upheld the defendant’s 25-year sentence for his manslaughter conviction despite his contention he was only 19 years old at the time of the incident, was a first felony offender, had no criminal history, had a child to support, and always held a job and supported himself and his family. The trial court took into consideration his reduced culpability in the crime[8] but also found the defendant “portrayed substantial cruelty in punching [the victim] while he was helplessly being strangled.” Id. at 23, 910 So.2d at 1005.
| uLike the above defendants, the defendant in the present case was a first-time offender, had a notable work history, and had always supported his wife and child. He also immediately accepted responsibility for his actions. Nonetheless, the defendant’s actions resulted in the death of another person. Considering the jurisprudence and the circumstances of the *759 present case, the trial court did not abuse its discretion when sentencing. The defendant’s mid-range sentence is not grossly disproportionate to the severity of the offense and does not shock the sense of justice.
ERROR PATENT DISCUSSION
The defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether defendant makes such a request. Our review reveals no patent errors that require remedial action.

CONVICTION AND SENTENCE AFFIRMED.

. In the record the victim is referred to as both Chaz and Chad. The indictment identifies the victim as Chaz.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

.At the time of defendant's arrest, the victim was still alive.

. The record does not reveal a pre-trial ruling prohibiting the testimony, but rather shows the trial court concluded a ruling was not necessary.

. See State v. Edwards, 97-1797, p. 20 (La.7/2/99), 750 So.2d 893, 906, cert. denied, 528 U.S. 1026, 120 S.Ct 542, 145 L.Ed.2d 421 (1999), where the Louisiana Supreme Court stated the "comment must not 'arguably’ point to a prior crime; to trigger mandatory mistrial pursuant to Article 770(2), the remark must 'unmistakably’ point to evidence of another crime. In addition, the imputation must 'unambiguously’ point to defendant.” (Internal citations omitted).

. In his appellate brief, the defendant concedes the comment was “relatively minor,” but asserts it warranted a mistrial because it was "a direct breach of the pre-trial ruling.”

. In Batiste, the defendant had been charged with second degree murder, but was found guilty of the lesser included offense of manslaughter.

. The defendant was convicted as a principal to manslaughter.