999 So.2d 1152 (2008)
STATE of Louisiana, Appellee
v.
Derrick S. JONES, Appellant.
No. 41,672-KA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2008.
Sherry Watters, Edward K. Bauman, New Orleans, for Appellant.
Jerry L. Jones, Stephen T. Sylvester, Assistant District Attorney, District Attorney, for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, J.
The defendant, Derrick S. Jones, was charged by bill of information with four counts of second degree kidnaping, in violation of LSA-R.S. 14:44.1. Following a trial by jury, he was convicted as charged.[1]
On appeal, the defendant's appellate counsel filed a brief asserting no non-frivolous issues, pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and State v. Mouton, 95-0981 (La.4/28/95), 653 So.2d 1176, and moved to withdraw as attorney of record. We granted counsel's motion to withdraw and affirmed the defendant's convictions and sentences. State v. Jones, 41,672 (La. App. 2d Cir., 2/28/07), 954 So.2d 187.
The defendant filed a pro se application for writ of certiorari with the Louisiana Supreme Court, arguing, inter alia, the trial court erred in denying his motion for mistrial and/or new trial "based on the testimony of Juror Phyllis Calloway, who stated that she did not respond that she was the victim of domestic violence during voir dire."[2] The Court granted the defendant's *1153 writ application, vacated the defendant's convictions and sentences and remanded the matter to this court with the following instructions:
The court of appeal shall order the voir dire testimony of juror Phyllis Benton Calloway transcribed for the record. In the event the transcript reveals significant discrepancies in her responses during voir dire examination and those she gave at the hearing on defendant's motion for a new trial with respect to whether she had been the victim of domestic abuse and disclosed that information in the course of jury selection, the court of appeal shall appoint counsel for defendant and order the case rebriefed. If no error still appears in the denial of the motion for a new trial, the court of appeal shall reissue an order affirming defendant's convictions and sentences without appointment of counsel and rebriefing.
State v. Jones, XXXX-XXXX (La.4/25/08), 979 So.2d 1272 (internal citations omitted).
In accordance with those instructions, we issued an order that all of the voir dire testimony be transcribed so that it may be examined for any general voir dire regarding domestic abuse to which Ms. Benton/Calloway might have responded. For the reasons set forth herein, we remand this matter to the trial court, direct the court to appoint counsel for the defendant and order the case be re-briefed.

FACTS

Voir Dire Examination
Ms. Benton/Calloway was part of the second panel of prospective jurors in this matter. The trial court reviewed the general qualifications of jury selection and posed questions to the prospective jurors with regard to whether they knew any of the attorneys, victims, the defendant or witnesses. The trial court then asked if anyone had been the victim of a kidnaping. The trial court recognized one prospective juror, Ms. Williams, and questioned her about her experience with regard to being kidnapped. The trial court asked if anyone else had been kidnapped or had anyone close to them been kidnapped, and then recognized Ms. Fletcher. The trial court questioned Ms. Fletcher on her experience, which was that her niece was kidnapped from a Johnny's Pizza, shot and "left for dead." The trial court then asked:
BY THE COURT: Okay. All right. Anybody else have a family experience, friends, anybody close to you who was a victim of kidnaping? No. Okay.
* * *[[3]]
The trial court then questioned the prospective jurors who indicated by a show of hands that they had served on a jury before. Ms. Benton/Calloway apparently raised her hand, was questioned and answered that she served on a criminal jury about ten years ago and the jury rendered a guilty verdict. Next, Mr. Sylvester, the assistant district attorney, questioned the panel of prospective jurors individually. He questioned Ms. Benton/Calloway regarding her prior jury service, burden of proof in a criminal case and the elements of second degree kidnaping. Later during voir dire, Mr. Sylvester posed questions to Ms. Benton/Calloway regarding her opinion of a person who does not work because of a handicap. Mr. Sylvester questioned several prospective jurors regarding their hobbies. When the microphone was *1154 passed to Ms. Benton/Calloway, she indicated that her hobbies included "surfing" the internet and reading.
Next, defense counsel, Mr. Perkins, questioned the panel. During Mr. Perkins' voir dire, he questioned the prospective jurors regarding their families, hobbies and occupations. When he had the microphone passed to Ms. Benton/Calloway, he asked her about her hobbies and the kind of books she liked to read, which included one by Johnny Cochran. Mr. Perkins questioned her about the constitutional rights of defendants in general, including the presumption of innocence. Mr. Perkins subsequently asked:
MR. PERKINS: Would you pass the microphone over to Mr. Nickelson? I'm going to ask this question, Mr. Nickelson, to the whole jury. Is there anybody in here that's ever been involved in a case of  in a domestic case where there's been some fighting between family members or they have close personal friends where there  had the same problem which would cause you not to be able to be fair in this particular case if that information came up? Okay. Now, Mr. Nickelson, where are you working, sir?
(Emphasis added.)
Mr. Perkins later asked:
MR. PERKINS: ... Is anybody in the jury box been the victim of a crime before? Themselves personally?
A JUROR: Domestic.
MR. PERKINS: Have you ever been a victim of a crime, Mr. Moore?
MR. MOORE: Yes, sir.
MR. PERKINS: I'm not going to even ask you about that. No, let me ask you. What kind of crime were you the victim of?
MR. MOORE: I've had somebody break in my truck before. One or two things stolen.
MR. PERKINS: Sir?
A JUROR: I've had my vehicle broken into.
(Emphasis added.)
After questioning a few more prospective jurors, the voir dire examination ended. Ms. Benton/Calloway was accepted as a juror.[4]

Hearing on the Motion for New Trial
At the hearing on the motion for new trial, Ms. Benton/Calloway's responses to the defense attorney's questions were as follows:
Q. Do you remember the court asked you some questions about whether anybody had been the victim of domestic violence?
A. Yes.
Q. And did you respond to those questions?
A. From my knowledge I did.
Q. And did you advise the court that you had been the victim of domestic abuse?
A. If I responded, that means I advised him.
BY THE COURT: What was your answer, Ma'am?
A. I said yes. And he came back and asked me the same thing.
Q. I asked you also do you remember me asking you any questions with regard to persons who have been the victim of domestic violence?
A. Yes. You asked several questions.

*1155 Q. And did you respond to those questions?
A. I'm pretty sure. I just respond to all of them because we had to respond to them. My answer was the same from the beginning. Yes.
Q. So you in fact had been the victim of domestic violence on more than one occasion?
A. Twice I do believe.
Q. And that was before this trial occurred?
A. Years ago. Yes.
Q. And you advised the court you had been the victim of domestic violence?
A. How many times are you going to ask me? I said yes the first time. He asked us and I think we raised our hand.

* * *

DISCUSSION
It is unclear from a reading of the transcript which juror stated that he or she had been the victim of domestic abuse. The transcript merely labeled the person as "A JUROR." At the hearing on the motion for new trial, on direct examination, Ms. Benton/Calloway's testimony that she told the court during voir dire that she was a victim of domestic abuse was tentative at first-it was prefaced with, "From my knowledge I did." She then stated that she raised her hand to signify that she had been a domestic abuse victim. The comment reflecting an affirmative answer to the domestic abuse question by "A JUROR" could have been made by Ms. Benton/Calloway during the questioning of her panel. Although Mr. Perkins asked several of the jurors in the first panel directly about domestic abuse during the individual questioning, he did not give the same individual attention to the issue with the second panel. The voir dire transcript does not clearly show which juror in the second panel answered defense counsel's question regarding domestic abuse in the affirmative. Additionally, there is confusion in the voir dire transcript regarding the voir dire testimony attributed to Ms. Benton/Calloway about a niece who was the victim of a kidnaping, which apparently should have been attributed to Ms. Fletcher.
It appears from the supplemental record that there are significant discrepancies in Ms. Benton/Calloway's testimony during voir dire and at the motion for new trial regarding whether she has been a victim of domestic abuse. However, the voir dire transcript fails to identify which particular juror admitted to being a victim of domestic abuse. Therefore, in the interest of justice, we remand this matter to the trial court, direct the court to appoint an attorney for the defendant and order the case be re-briefed.

CONCLUSION
For the reasons set forth herein, we remand this matter to the trial court and direct the trial court to appoint an attorney for the defendant and notify this court of that appointment within 30 days of the date of this ruling. The clerk of this court is then directed to order the case to be re-briefed in accordance with the rules of this court.
REMANDED WITH INSTRUCTIONS.
NOTES
[1] With regard to count one, the defendant was adjudicated a third felony habitual offender and was sentenced to serve 30 years in prison at hard labor without benefit of probation, parole or suspension of sentence. Regarding counts two, three and four, the defendant was sentenced to serve 15 years in prison at hard labor without benefit of probation, parole or suspension of sentence on each count. Counts two, three and four were ordered to run concurrently to each other, but consecutively to count one.
[2] This juror is alternatively referred to in the proceedings as "Calloway" and "Benton." Hence, we use both names in this opinion.
[3] There is some confusion in the transcript. One portion of the transcript identified Ms. Fletcher as the prospective juror who indicated that her niece had been the victim of a kidnaping. However, subsequent portions of the transcripts identified Ms. Benton/Calloway as the juror who answered questions pertaining to the kidnaping of her niece.
[4] The attorneys made their challenges to certain jurors. The defense challenged Ms. Williams and Ms. Fletcher for cause and those challenges were denied. A peremptory challenge was exercised against Ms. Fletcher. Apparently, Ms. Williams was also the subject of a peremptory challenge because she was not listed on the jury panel in the minutes.