999 So.2d 1156 (2009)
STATE of Louisiana, Appellee,
v.
Derrick S. JONES, Appellant.
No. 41,672-KA.
Court of Appeal of Louisiana, Second Circuit.
January 14, 2009.
*1157 Annette F. Roach, for Appellant.
Jerry L. Jones, District Attorney, Stephen T. Sylvester, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, J.
The defendant, Derrick S. Jones, was charged by bill of information with four counts of second degree kidnapping, in violation of LSA-R.S. 14:44.1. Following a trial by jury, he was convicted as charged, and this court affirmed the defendant's convictions and sentences. State v. Jones, 41,672 (La.App.2d Cir.2/28/07), 954 So.2d 187.
In the original appeal, the defendant's appellate counsel filed a brief asserting no non-frivolous issues, pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and State v. Mouton, 95-0981 (La.4/28/95), 653 So.2d 1176, and moved to withdraw as attorney of record. We granted counsel's motion to withdraw and affirmed the defendant's convictions and sentences. Thereafter, the defendant filed a pro se application for writ of certiorari with the Louisiana Supreme Court, arguing, inter alia, the trial court erred in denying his motion for mistrial and/or new trial "based on the testimony of Juror Phyllis Calloway, who stated that she did not respond that she was the victim of domestic violence during voir dire."[1] The Court granted the defendant's writ application, vacated the defendant's convictions and sentences and remanded the matter to this court. State v. Jones, XXXX-XXXX (La.4/25/08), 979 So.2d 1272.
In accordance with the Court's instructions, this court ultimately issued an order that all of the voir dire testimony be transcribed so that it may be examined for any general voir dire regarding domestic abuse to which Ms. Benton/Calloway might have responded.[2] After reviewing the supplemental record, we found that there appeared to be significant discrepancies in Ms. Benton/Calloway's testimony during voir dire and at the motion for new trial regarding whether she has been a victim of domestic abuse. Accordingly, in the interests of justice, we remanded this matter to the trial court, directing the court to appoint an attorney for the defendant and order the case be rebriefed. State v. Jones, 41,672 (La.App.2d Cir.9/17/08), 999 So.2d 1152, 2008 WL 4225961.

*1158 DISCUSSION

Motion for New Trial
The defendant contends the trial court erred in denying his motion for new trial. He argues that he was denied a fair trial guaranteed to him by the Sixth Amendment to the United States Constitution and Art. I, § 16 of the Louisiana Constitution. Specifically, he argues that Ms. Benton/Calloway's failure to answer voir dire questions truthfully regarding whether she had been a victim of domestic abuse denied him his right to a fair trial. The defendant notes that the prospective juror's past history was not available to him prior to trial, and despite questioning, Ms. Benton/Calloway was not forthcoming with the information. The defendant argues that this court cannot arbitrarily assess the response of "Domestic" by "a Juror" to Ms. Benton/Calloway, and even so, this alone would not show that Ms. Benton/Calloway was truthful in her dealings with the trial court. The defendant categorizes Ms. Benton/Calloway's responses to questions at the hearing on the motion for new trial as "evasive and very argumentative," and argues that she never came forward with her history of domestic abuse, despite extensive questioning of other jurors about prior domestic abuse problems or being a victim of a crime. The defendant further contends that he was prejudiced by "jury deception and implied bias," and notes that he "still had a peremptory challenge available" at the time Ms. Benton/Calloway was chosen as juror number eleven.[3] In the alternative, the defendant argues that the case should be remanded for a new hearing so that he may be afforded the opportunity to question Ms. Benton/Calloway to show she was biased against men engaging in any activity that could be perceived as domestic abuse.
The denial of a motion for new trial is not subject to appellate review except for error of law. LSA-C.Cr.P. art. 858; State v. Quiambao, 36,587 (La.App.2d Cir.12/11/02), 833 So.2d 1103, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1130; State v. Horne, 28,327 (La.App.2d Cir.8/21/96), 679 So.2d 953, writ denied, 96-2345 (La.2/21/97), 688 So.2d 521. The decision to grant or deny a new trial rests in the sound discretion of the trial court. State v. Brisban, XXXX-XXXX (La.2/26/02), 809 So.2d 923. Generally, a motion for new trial will be denied unless the defendant establishes that he or she has suffered some injustice. LSA-C.Cr.P. art. 851; State v. Burrell, 561 So.2d 692 (La. 1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991); State v. Quiambao, supra; State v. Horne, supra.
LSA-C.Cr.P. art. 851 provides, in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * *
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or

*1159 (5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
LSA-C.Cr.P. art. 797 provides, in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
* * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
* * *
(4) The juror will not accept the law as given to him by the court....
* * *
The defendant must prove that he was not aware of the juror's status when he accepted him and that he could not have discovered this information by the exercise of due diligence. LSA-C.Cr.P. art. 851(4); State v. Herrod, 412 So.2d 564 (La.1982); State v. Neal, 550 So.2d 740 (La.App. 2d Cir.1989), writ denied, 556 So.2d 55 (La.1990). When a motion for new trial is based on newly discovered evidence, the motion must contain allegations of facts sworn to by the defendant or his counsel showing the specific nature of the error or defect complained of and that the error was not discovered before or during trial, despite the exercise of reasonable diligence. LSA-C.Cr.P. art. 855; State v. Herrod, supra; State v. Neal, supra.
In State v. Neal, supra, during voir dire, the trial court asked the panel as a whole if anyone had ever been convicted of a felony. The juror in question remained silent and was ultimately selected to serve as a juror. The defendant was convicted and appealed arguing, inter alia, that the trial court committed reversible error in denying his motion for a new trial. This court noted that the defendant's attorney did not ask the juror in question individually whether he had been convicted of a felony. This court concluded that the defendant failed to show that he was prejudiced, stating:
In State v. Duplissey, 529 So.2d 1379 (La.App. 2d Cir.1988), we found that prejudice did not exist where a juror stated falsely on voir dire that he was literate. The verdict of guilty was by an 11-1 verdict for conviction, with only a 10-2 verdict needed. We found there was no prejudice because the unqualified juror's vote was not needed. Here, the guilty verdict was unanimous, with only ten votes needed to convict. Therefore, under State v. Duplissey, supra, defendant was not prejudiced by this error and it is not grounds for reversal.
Id. at 744-45.[4]
Similarly, in State v. Johnson, 32,910 (La.App.2d Cir.1/26/00), 750 So.2d 398, *1160 writ denied, XXXX-XXXX (La.11/3/00), 773 So.2d 140, the defendant argued that the trial court erred in failing to grant his motion for new trial which alleged that two jurors were dishonest in their responses regarding relatives who had drug addictions. Citing State v. Neal, supra, this court stated, "[B]ecause Johnson was convicted by a unanimous jury, in a case where only ten votes were required for conviction, he cannot show prejudice regarding the statements of the two jurors on voir dire." Id. at 404.
In the instant case, the defendant was found guilty by a unanimous jury. Only 10 out of 12 votes were required to convict the defendant of second degree kidnapping. See LSA-C.Cr.P. art. 782. Therefore, in accordance with the jurisprudence cited above, the defendant was not prejudiced by Ms. Benton/Calloway's statements or representations during voir dire because, even if she was unqualified to serve on the jury, her vote was not required to convict the defendant.
Additionally, it is arguable that Ms. Benton/Calloway's failure to disclose potential bias raises doubts about her candor and her ability to serve impartially. However, as noted above, to merit a new trial, the defendant must prove that he was not aware of the juror's status when he accepted him or her, and that he could not have discovered this information by the exercise of due diligence. LSAC.Cr.P. art. 851(4); State v. Herrod, supra; State v. Neal, supra.
Our reading of the voir dire transcript reveals that the defendant's trial counsel questioned potential jurors in the first panel specifically about domestic abuse. However, he did not ask members of the second panel, which included Ms. Benton/Calloway, individual questions about the issue. Had he done so, it is possible that the defendant could have discovered Ms. Benton/Calloway's history of domestic violence.
This assignment lacks merit.

Challenges for Cause[5]
The defendant contends the trial court erred in denying his challenge for cause with regard to potential jurors Karen Fletcher and Sylvia Baxter. He argues that he exhausted all of his peremptory challenges, two of which were used to excuse potential jurors Baxter and Fletcher after the court denied challenges for cause. According to the defendant, both prospective jurors described "traumatic events" in their lives similar to the one at issue in the trial and expressed that the incidents were "fresh" on their minds. He concedes both Fletcher and Baxter stated that they believed they could be fair; however, he argues that they noted that the jury selection had made them think about these traumatic events and urges this court to "seriously consider" their ability to be impartial.
When a defendant uses a peremptory challenge after a challenge for cause has been denied, the defendant, in order to obtain a reversal of his conviction, must show erroneous denial of the challenge for cause and the use of all of his peremptory challenges prior to completion of the jury panel. LSA-C.Cr.P. art. 800; State v. Ross, 623 So.2d 643 (La.1993); State v. Gatti, 39,833 (La.App.2d Cir.10/13/05), 914 So.2d 74, writ denied, 2005-2394 (La.4/17/06), 926 So.2d 511. A trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror. Such determinations will not be disturbed on *1161 review unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Lindsey, 2006-255 (La. 1/17/07), 948 So.2d 105; State v. George, 26,867 (La.App.2d Cir.4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855. In State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278, the Court addressed the trial court's discretion as follows:
A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. "[A] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably inferred."
Id. at 1281 (internal citations omitted).
The declaration of an otherwise fair and impartial juror that he or she was previously the victim of a crime similar to that for which the defendant stands charged does not render the juror incompetent to serve. State v. Hopkins, 39,730 (La.App.2d Cir.8/17/05), 908 So.2d 1265, writ denied, 2005-2253 (La.3/17/06), 925 So.2d 541; State v. Robinson, 36,147 (La. App.2d Cir. 12/11/02), 833 So.2d 1207. Furthermore, courts have upheld the denial of challenges for cause of prospective jurors whose relatives have been crime victims when the juror states that he or she would be fair, impartial, and not prejudiced against the defendant. See, State v. Hopkins, supra; State v. Walker, 577 So.2d 770 (La.App. 2d Cir.1991), writ denied, 581 So.2d 704 (La.1991); State v. Thom, 615 So.2d 355 (La.App. 5th Cir. 1993).
In the instant case, during voir dire, the trial court asked the prospective jurors if they or anyone close to them had been a victim of kidnapping. Fletcher responded that her niece had been a victim in the Johnny's Pizza kidnapping and attempted murder case. She expounded that her niece had been robbed, kidnapped and left to die. The trial court asked if that experience would affect her ability to sit as a juror and decide the case on the basis of the law and evidence. The following exchange transpired:
MS. FLETCHER: Well, I prayed on it last night that I could be [sic] not think of her and think of just the situation in this case.
THE COURT: All right. You didn't pray that you would be able to get on this jury and stick it to him did you?
MS. FLETCHER: Oh, no, no, no, no.
THE COURT: All right. I'm serious about that to a certain extent because we do have unfortunately a few occasions where people have personal agendas.
MS. FLETCHER: And see this has just been four (4) years but I mean I didn't even have anything against ... I worked with two of the people that was connected to them, a grandson and a cousin and I had no bad feelings towards them at all. You know, it was strictly to the boys that done [sic] this and I, you know, I pray that I can just not even think about that and just listen to this.
During questioning by the defense, the following transpired:
MR. PERKINS: ... Ms. Fletcher, I don't want to go over and over something with you what you said to Mr. Sylvester and the judge. Your niece was a victim of a very horrible crime.
MS. FLETCHER: Right.

*1162 MR. PERKINS: And you've said you could be fair.
MS. FLETCHER: Yes.
MR. PERKINS: Despite that?
MS. FLETCHER: Right.
MR. PERKINS: Have you searched your heart? I know you said you prayed about that and I appreciate that. And you think you really could be fair or do you think really when it comes down to it, there might be some question in your mind about your objectivity in this case?
MS. FLETCHER: No. Now yesterday I did have doubts. And after I prayed over it last night, the Lord put a calmness over me that was telling me that I could be.
The defense made a challenge for cause with regard to Ms. Fletcher. The trial court denied the challenge, stating that the defense would have to use a peremptory challenge to remove Ms. Fletcher.
At another point, while the trial court was discussing the principles of law that must be followed with the prospective jurors, Ms. Sylvia Baxter volunteered the information that about 25 years ago, her first husband was hit in the head, robbed and left in the woods. The following colloquy transpired:
THE COURT: [D]o you think that that experience what happened to your husband would ... affect you to the extent that ... any kidnapping case that youeven now might have a problem being fair to either side in this case. State or particularly the defendant?
MS. BAXTER: I don't believe so.
During questioning by the defense, the following transpired:
MR. PERKINS: ... Ms. Baxter, you told us about a tragic incident involving your former spouse.
MS. BAXTER: Yes, sir.
MR. PERKINS: You said that you would be fair if you were selected to be on the jury.
MS. BAXTER: I believe I could be.
MR. PERKINS: Uhgo ahead.
MS. BAXTER: He was robbed and hit on the back of the head by somebody that was on drugs and it was one of those things. That's been about twenty-five (25) years ago.
MR. PERKINS: Okay. Did he survive?
MS. BAXTER: Yes, sir. Well, he died in 1984 but it wasn't from that.
MR. PERKINS: Okay. And it's far enough back that you can kind of put it out of your memory?
MS. BAXTER: More or less. I don't think you ever forget anything like that.
MR. PERKINS: Pretty tragic
MS. BAXTER: Pretty scary.
MR. PERKINS: Yeah, pretty scary event. Uh, you indicate that you can be fair in this particular case?
MS. BAXTER: Right.
MR. PERKINS: Is there any doubt in your mind that you can be fair?
MS. BAXTER: I don't believe I would be unfair. I would listen. I sure wouldn't want anybody to judge me until they heard all the evidence.
MR. PERKINS: Right. That was my next question I was going to ask you. I was going to ask you if you were sitting in my client's seat would you want somebody like yourself to be a juror?
MS. BAXTER: I believe so.
The defense challenged Ms. Baxter for cause. The trial court referenced its notes and denied the challenge, finding that Ms. Baxter responded she could be fair and follow the law. The court noted that the incident involving Ms. Baxter's first husband *1163 occurred 25 years ago and that Ms. Baxter did not indicate any "off the wall answers or mindsets that made her inconsistent with jury service." The defense used a peremptory challenge to excuse Ms. Baxter.
A review of the voir dire as a whole reveals that the trial court did not abuse its great discretion in determining that cause has not been shown to reject Ms. Fletcher and Ms. Baxter for cause. Both prospective jurors indicated that they would be fair, impartial, and not prejudiced against the defendant. Therefore, we find that their responses, as a whole, did not indicate bias, prejudice or the inability to render a fair and impartial verdict.
This assignment is without merit.

CONCLUSION
For the reasons set forth herein, we affirm the defendant's convictions and sentences.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED.
NOTES
[1] This juror is alternatively referred to in the proceedings as "Calloway" and "Benton." Hence, in this opinion, we will refer to the juror as "Ms. Benton/Calloway." The defendant did not file a pro se brief with this court.
[2] Our first order was in direct compliance with the Supreme Court's instructions, i.e., we requested and reviewed the voir dire testimony of juror Benton/Calloway. Because that portion of the transcript did not reveal any discussion with the potential juror with regard to the subject of whether she had been the victim of domestic abuse, we ordered, and have now received, the entire voir dire transcript.
[3] The defendant also contends this court should take judicial notice of the bills of information charging acts of domestic abuse and listing Ms. Benton/Calloway as the victim, which are exhibits to the motion for new trial. However, consideration of the exhibits is unnecessary because prospective juror Benton/Calloway readily admitted that she had been the victim of domestic abuse at the hearing on the motion for new trial.
[4] In State v. Duplissey, 529 So.2d 1379 (La. App. 2d Cir.1988), the defendant was found guilty, and defense counsel requested that the jury be polled. Thereafter, it was discovered that one of the jurors could not read or write. That juror had responded affirmatively to the query of whether he could read or write. This court concluded that there was no prejudice because the unqualified juror's vote was not needed to convict the defendant, reasoning that the verdict of guilty was by an 11-1 verdict for conviction, with only a ten to two verdict needed.
[5] Although the defendant did not raise this issue in the original brief to this court, he contends that he should be allowed to raise it at this stage of the proceedings because the voir dire had not been transcribed as part of the original record.