DREW, J.
| T LaBarrie D. Watson appeals his two convictions: attempted manufacturing of cocaine and possession with intent to distribute cocaine.
I. ERRORS ASSIGNED IN THIS APPEAL
He urges that these errors were made at the trial level:
• there was insufficient evidence to support his convictions;
• his pro se motion to suppress should have been granted;
• the court improperly admitted copies of photographs of buy funds;
• his motion for new trial was improperly denied;
• his motion for reconsideration of sentence was improperly denied;
• he should have been granted a Franks[1] hearing; and
• ineffective assistance of counsel.
We affirm both convictions. Each sentence is illegally lenient. We vacate these sentences and remand for resentencing. We direct the trial court to apportion part of each sentence be served without benefits.
II. FACTS
A. FACTUAL LAW ENFORCEMENT TESTIMONY
Six law officers[2] testified about the facts of the investigation and the execution of *697 the search warrants. Their testimony was consistent.
12This case began in May 2011, after receipt of information about the distribution of crack cocaine at two premises in the 2500 and 2600 blocks of Darien Street. On several occasions, the officers had observed the defendant traveling between 2512 Darien Street, 2602 Darien Street, and 1441 Claiborne Avenue. He had been tied to the 2512 Darien Street address through past investigations. The 2602 Darien Street house was an empty trap house[3] without water hookup. Confidential informants made multiple drug buys with prerecorded buy money at the two Darien Street houses.
Based on the foregoing, search warrants were secured for each house.
When the law officers arrived at 1441 Claiborne Avenue, they observed several security cameras; a pickup, known to be connected to the defendant; a parked carpet cleaning van; a partially open front door; and cleaning hoses running from the van through the front door. When the officers knocked, there was no response. They entered the 1,500-square foot residence and told the uniformed carpet cleaning employees to leave.
Watson peered out into the hallway from the rear bedroom, made eye contact, slunk back into the room and shut the door. He did not come out of the room until the officers identified themselves again. He was then handcuffed, searched and advised of his rights as per Miranda.[4]
Between $150 and $200 was seized from the truck, $85 of whidl was traceable to the controlled drug buys at the Darien gtreet locations
the main bedroom, three firearms were discovered:
|a> a .857 revolver between the box spring and the mattress:
• an AK-47 pistol under the left side of the bed; and
• a .22 caliber revolver in a drawer in the room.
The state submitted photographs of the currency and firearms.
Also seized from the master bedroom were:
• several television monitors of a surveillance system;
• $1,581 in a dresser drawer;[5]
• male clothing;
• photos of Watson and Keriea Hymes together;
• a prescription bottle[6] in the defendant’s name;
• defendant’s driver’s license and I.D. card;[7]
• various receipts and pieces of mail addressed to the defendant.[8]
From the kitchen, the agents seized:
*698 • a flat dish containing a white rock-like substance in the pantry;
• a digital scale and a measuring cup, each with white powdery residue;
• packaging materials and small Apple Baggies;
• ammunition; and
14* slightly over 10 grams of cocaine.[9]
B. EXPERT LAW ENFORCEMENT TESTIMONY
Lt. Carl Townley of the Caddo Shreveport Narcotics Task Force testified as an expert regarding possession with intent to distribute drugs, as well as the packaging, sale and distribution of narcotics.[10] Town-ley testified that based on his review of the evidence at 1441 Claiborne Avenue and accompanying reports, he believed that Watson had been cooking dope and possessing it with intent to distribute. He relied on these facts:
• a large amount of drugs was already cooked;
• a Pyrex container containing residue was in the sink;
• there was already a large quantity of crack cocaine;
• seven grams of cocaine (1/4 ounce) were found in a large Baggie;
• this amount of cocaine would make 70 individual dosage units;
• the product had not been cut up, yet there were probably 100 Baggies;
• this amount was inconsistent with personal use;
• there was no crack pipe;
• a lethal dose of cocaine is 8.1 grams within a 24-hour period;
• mid-level dealers supply street-level dealers, who stand on street corners selling little $10 bags (commonly called dime bags) of crack;
• mid-level dealers sell large amounts[11] and use electronic scales;
|5» mid-level dealers do not peddle dime
bags on the street;
• mid-level dealers get trap houses and small-timers to sell their drugs;
• the officers followed Watson, placing him at each location;
• serial numbers on currency are similar to fingerprints;
• buy money is essential in controlled drug buys;
• drug dealers do not keep property in their own name; and
• family and girlfriends often keep the property in their names.
C. DEFENSE TESTIMONY
Kerica Hymes testified that:
• the day before the searches, she gave birth to Watson’s child;
• she lived alone at 1441 Claiborne Avenue in Shreveport;
• Watson did not and has never lived with her;
• Watson was a friend of the family;
• she was in the hospital for several days before giving birth;
• she wanted the carpets cleaned before she and the baby came home;
*699 • Watson was at her home only to open the door for the carpet cleaners;
• he was going to bring back her key, and he seldom spent the night;
• she told Watson’s lawyer that the money and drugs belonged to her;
• Watson did not know that she had drugs and money in the house;
• she had given Watson $500 for the carpet cleaner and baby supplies;
• she had never seen Watson make crack cocaine in her house;
• Watson does not use or sell cocaine;
• she is 18 years old, and Watson is 31;
• the two of them have been friends for two or three years;
|fi* she has two children, including one child fathered by Watson;
• she has never been arrested;
• she dropped out of high school after the birth of her first child;
• she has received her GED;
• she works for a temporary service and is a hairdresser;
• she makes about $2,300 a month;
• she lives at 1441 Claiborne Avenue and pays rent of $600 a month;
• the cocaine belonged to friends who visited;
• she had bought a pistol for her own protection;
• she knew of no other guns in her house;
• when asked about the AK-47 which was bought by Arnetta Carter, she denied knowing of any romantic relationship between Watson and Carter, but did admit that Carter had been to her house;
• she and Watson do not have sex, but they do share a child;
• the money found at her house was baby shower money;
• she and Watson went out a couple of times per week;
• the drugs were hers, but she did not know who brought the drugs; and
• before trial she had never told the state that the drugs were hers.
D. REBUTTAL BY THE STATE
Agent Brown was called back to the stand and testified that:
• Arnetta Carter was a previous acquaintance of Watson;
• Carter purchased the AK pistol 200 days prior to its seizure;
• Carter and Watson had a domestic relationship;
• in June, a controlled crack buy was made at 2602 Darien Street; and
17» buy funds from that operation were found at 1441 Claiborne Avenue.
A 12-member jury unanimously found Watson guilty as charged. The state mul-ti-billed Watson as a third-felony offender. He initially entered a plea of not guilty, but later pled guilty, after which a presen-tence investigation (“PSI”) was ordered.
III. ANALYSIS
A. SUFFICIENCY
Watson asserts that: (1) the law officers did not recover a large amount of cocaine packaged for sale; (2) the cocaine could have been for Watson’s personal use; (3) the drugs were found in a bedroom and not the kitchen, showing that he exercised no dominion or control over the cocaine; (4) neither his fingerprints nor his DNA was found on the seized evidence; and (5) the lease was in Kerica Hymes’s name, demonstrating that she was actually in possession of the cocaine.
The state responds by highlighting the following evidence presented at trial: (1) the testimony from multiple police officers and surveillance investigators who had watched Watson; (2) the presence of Wat *700 son’s driver’s license, I.D. card, and prescription bottle in the master bedroom; (3) Watson’s relationship with Hymes based on their child; (4) Watson’s sole presence at the home at the time of the search; (5) the prerecorded money from the controlled drug buys at the Darien Street addresses located in Watson’s truck and the master bedroom; (6) the large amount of crack cocaine (over seven grams) in the kitchen and the expert’s testimony that this amount is a lethal dose for personal use; (7) the set of digital scales with |8cocaine residue, the razor blade, the baking soda, and the small Baggies for packaging; (8) the Pyrex dish with cocaine flakes sitting in the sink; and (9) the lack of paraphernalia with which to smoke the crack cocaine.
The state accordingly submits that Watson lived at 1441 Claiborne Avenue, was in constructive possession of the cocaine, and was manufacturing crack cocaine.[12]
Our law on the appellate review of insufficiency claims is clear.[13]
The crimes of conviction are straightforward.[14]
Our jurisprudence is helpful in reviewing drug possession cases.[15]
*701 | a(i) Attempted Manufacture of Cocaine
The record supports a finding that Watson had the specific intent to manufacture crack cocaine. He lived at 1441 Claiborne Avenue with Kerica Hymes. He was seen traveling to and from the Darien Street addresses. The items seized proved he resided at the Claiborne Avenue property. Lt. Townley testified that drug dealers avoid purchasing property in their name for fear of seizure.
The evidence supports a finding that Watson was cooking cocaine in the kitchen. Further, upon his arrest, he admitted to owning the drugs.
Despite Ms. Hymes’s favorable testimony for the defendant, it is hard to believe that she would cook crack cocaine and leave the drugs and packaging materials in plain view, pack her bags, and check in the hospital on May 29, 2011, in anticipation of the birth of her second child. The jury clearly disbelieved her testimony that Watson did not live with her, they never had a relationship, and he borrowed her key only for the purpose of the carpet cleaning.
|inBased on the evidence, any rational trier of fact could have found the essential elements of the crime of attempted manufacture of controlled dangerous substances (cocaine), Schedule II, were proven beyond a reasonable doubt. There was no manifest error in the jury’s conclusion that Watson was guilty.

(ii) Possession of Cocaine with Intent to Distribute

Watson clearly exercised dominion and control over the cocaine, and possessed it with intent to distribute. The items seized are his undoing:
• over 10 grams of cocaine in three areas of the house;
• small “Apple” Baggies containing cocaine;
• dozens of other small Baggies;
• electronic scales and a razor blade with drug residue; and
• his driver’s license and other paperwork tying him to the scene.[16]
Currency from Darien Street drug buys were found at 1441 Claiborne Avenue and in Watson’s truck. It is not unreasonable for the jury to disbelieve Hymes’s theories as to the origin of the money. This record, viewed in the light most favorable for the prosecution, proves that Watson was manufacturing crack cocaine at the Claiborne house and sending it to Darien Street for distribution.
Based on the evidence, a rational trier of fact could have found the essential elements of the crime of possession with intent to distribute controlled dangerous substances, Schedule II (cocaine), were proven | nbeyond a reasonable doubt. There was no manifest error in the jury’s conclusion that Watson was guilty.
*702 B. MOTION FOR NEW TRIAL
Watson asserts that the trial court should have granted him a new trial. The state asserts that the defendant has articulated no legal error.
La. C. Cr. P. art. 851 is instructive on this issue.[17]
In reviewing the record, we conclude that Watson has suffered no injustice, nor has he met his burden of proving the existence of such harm. His mere denial that the drugs were not his does not allow him a new trial.
|1PC. DENIAL OF MOTION TO RECONSIDER OR MODIFY SENTENCE
The court sentenced the defendant to 30 and 45 years at hard labor, to be served concurrently, with no prison time to be served without benefits.
Defendant urges that his sentences were grossly out of proportion to the severity of the crime, particularly since there were no aggravating circumstances.
Immediately before sentencing, the trial court explained that:
• the PSI reflected that defendant’s litany of crimes began in 1997;
• defendant was involved in the sale and manufacture of cocaine; and
• three guns were seized at the scene.
The state asserts that the sentences are not excessive because of the defendant’s criminal history, the firearms recovered, and the trial court’s ample consideration of the sentencing guidelines.[18]
The sentencing provisions for these crimes in 2011 were clear.[19]
*703 113Our law on reviewing allegedly excessive sentences is well settled.[20]
Watson pled guilty as a third-felony offender and was sentenced pursuant to a PSI. We see no error in this sentence, other than it is actually illegally lenient.
D. DENIAL OF BOTH THE MOTION TO SUPPRESS AND A FRANKS HEARING
Defendant attacks the affidavit in support of the search warrant, challenging the truthfulness of the confidential informant. Our law reflects a policy against revealing the identity of a confidential informant.[21]
*704 | 14 Agents Whitehorn and Alkire testified that the reliable Cl used in the “buy-back” twice purchased drugs at the Darien Street residence. Other drug buys were made at the 2602 and 2512 locations. Watson is not charged with those distributions. We cannot see that the Cl’s identity will provide Watson with information relevant to his defense. The threshold for a Franks hearing has not been approached. The defendant’s naked conclusion of false statements affords him no relief.
[ir,E. USE OF PHOTOS OF CURRENCY, DRUGS AND WEAPONS
The defendant’s claims in this regard are frivolous, and, at the very most, would be a factor of weight for a jury to consider. F. INEFFECTIVENESS OF COUNSEL
The defendant claims that trial counsel filed no pretrial motions, admitted his guilt during closing,[22] and apologized for his poor defense on three occasions.
Our law on appellate review of ineffectiveness claims is well settled.[23]
*705 This record does not reflect that counsel’s performance fell below an objective standard of reasonableness. The defendant has failed to present evidence that the outcome of the trial would have differed had pretrial motions been filed.
G. ILLEGALLY LENIENT SENTENCES
The concurrent sentences lack the required prohibition of benefits.
| ^DECREE
We affirm both convictions but vacate the sentences and remand, directing the trial court to affix a portion of each sentence to be served without benefits.
CONVICTIONS AFFIRMED; REMANDED FOR RESENTENCING.
APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.

. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), held that a hearing is required if a defendant makes a substantial preliminary showing that a false statement was intentionally or recklessly included in an affidavit in support of a search warrant, and the tainted information was necessary for a finding of probable cause. Mere conclusions do not trigger a Franks hearing. A defendant must proffer specific proof as to the falsehoods by the state, reflecting the affi-ant's deliberate or negligent misrepresentation. See State v. Brannon, 414 So.2d 335 (La.1982), and State v. Donald, 2013-0018 (La.5/3/13), 115 So.3d 1138.

. Rachel Alkire, Henry Whitehorn, Jr., John Stratton, Sean Parker, Ryan Robinson, and Jeff Brown are all agents of the Shreveport Police Department or the Caddo Parish Sheriff’s Office. Most worked on a combined drug task force for Caddo Parish.

. A "trap house” is a place from which drugs are stored and sold.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. Agent Robinson testified that the exact amount in the bag was $1,581.00. At trial, the state entered into evidence a photograph of the currency.

. The bottle contained hydrocodone.

. The license showed defendant’s home address to be 1512 Darien Street.

. Five pieces of mail were addressed to "La-berrie Watson, 2512 Darien Street, Shreveport, Louisiana 71109”; a receipt from Mr. Rooter Plumbing, dated May 24, 2011, written to "Laberrie Watson, 1441 Clayboin (sic) Ave., Shreveport, LA 71103,” and a Center-Point Energy bill addressed to "Shanacio Watson, 2602 Darien Street, Shreveport, LA 71103.”

.Agent Alkire confirmed the above and also testified as to finding baking soda and a razor blade coated with apparent drug residue. Bruce Stenz, a forensic chemist with the North Louisiana Crime Lab, testified as an expert witness, confirming that the substances seized were cocaine.

. Townley testified about his 28 years in law enforcement, 25 of which as a narcotics agent. He has testified over 100 times in state and federal courts as an expert witness.

. Examples: eight balls (3.5 grams) or quarter ounces (seven grams).

. See discussion of the factual proof required to demonstrate constructive possession found in United States v. Meza, 701 F.3d 411 (5th Cir.2012).

. The standard of appellate review is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). Further, when the conviction is based on circumstantial evidence, La. R.S. 15:438 states that "assuming every fact to be proved that the evidence tends to prove, in order to convict, [the circumstantial evidence] must exclude every reasonable hypothesis of innocence.” However, La. R.S. 15:438 does not establish a stricter standard than Jackson v. Virginia, supra; rather, it serves as a helpful evidentiary guide for jurors in evaluating circumstantial evidence. State v. Major, 2003-3522 (La. 12/1/04), 888 So.2d 798.

. In 2011, La. R.S. 40:967(A), provided, in pertinent part:
A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II.
In 2011, our attempt statute, La. R.S. 14:27, provided, in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

.Possession of a controlled dangerous substance may be established by actual physical possession or by constructive possession. Constructive possession depends on dominion and control over the drugs, even in the absence of physical possession. State v. Russell, 46,426 (La.App.2d Cir.8/17/11), 73 So.3d 991, writ denied, 2011-2020 (La.2/10/12), 82 So.3d 270. Mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession; five factors have been identified as useful in determining whether circumstantial evidence is sufficient to prove intent to distribute a controlled dangerous substance. The factors include: (1) whether the defendant ever distributed or attempted to distribute the controlled dangerous substances; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of the drug creates an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of the drug found in the defendant’s possession is inconsistent *701 with personal use; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. Cummings, 46,038 (La.App.2d Cir. 1/26/11), 57 So.3d 499, writ denied, 2011-0341 (La.6/17/11), 63 So.3d 1037. Testimony of street value and dosage of the drug is also relevant to the issue of intent to distribute. State v. Gladney, 29,791 (La.App.2d Cir.9/24/97), 700 So.2d 575. Mere possession of contraband does not amount to evidence of intent to distribute “unless the quantity is so large that no other inference is possible.” See State v. Greenway, 422 So.2d 1146 (La. 1982). La. C.E. art. 701 permits a law enforcement officer to express an opinion regarding matters of personal knowledge gained through experience, even if the witness is not first qualified as an expert. State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir. 1992), writ denied, 617 So.2d 905 (La. 1993).

. Also of importance is what was not found: a crack pipe.

.The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded. Art. 351 states:
"The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilt;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
The decision on a motion for a new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Cox, 2010-2072 (La. 11/19/10), 48 So.3d 275. The denial of a motion for new trial is not subject to appellate review except for error of law. La. C. Cr. P. art. 858; State v. Jones, 41,672 (La.App.2d Cir. 1/14/09), 999 So.2d 1156, writ denied, 2009-0311 (La. 11/6/09), 21 So.3d 297. Generally, a motion for new trial will be denied unless the defendant establishes that he or she has suffered some injustice. La. C. Cr. P. art. 851; State v. Burrell, 561 So.2d 692 (La. 1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991); State v. Jones, supra.

. La. C. Cr. P. art. 894.1.

. La. R.S. 40:967 provided, in pertinent part:
(4)(a) Production or manufacturing of cocaine or cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule 11(A)(4) of R.S. 40:964 or oxycodone as provided in Schedule II(A)(l)(o) of R.S. 40:964 or methadone as provided in Schedule II(B)(11) of R.S. 40:964 shall be sentenced to imprisonment at hard *703 labor for not less than ten nor more than thirty years, at least ten years of which shall be served without benefit of parole, probation, or suspension of sentence, and may be fined not more than five hundred thousand dollars.
(b) Distribution, dispensing, or possession with intent to produce, manufacture, distribute, or dispense cocaine or cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule 11(A)(4) of R.S. 40:964 or oxycodone as provided in Schedule II(A)(l)(o) of R.S. 40:964 or methadone as provided in Schedule II(B)(11) of R.S. 40:964 shall be sentenced to a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars.
In 2011, La. R.S. 40:27 provided, in pertinent part:
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
In 2011, La. R.S. 15:529.1 provided, in pertinent part:
(3) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(a) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction[.]

. A reviewing court imposes a two-prong test in determining whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reveals that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dillard, 45,633 (La.App.2d Cir.l 1/3/10), 55 So.3d 56, writ denied, 2010-2853 (La. 11/18/11), 75 So.3d 454. The important elements which should be considered are the defendant’s personal history (his age, family ties, marital status, health, employment record), prior criminal history, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Dillard, supra.
Second, a sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La. 1980). A trial court has broad discretion in sentencing offenders. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Kidd, 45,638 (La. App.2d Cir.l 1/3/10), 55 So.3d 90.
A trial court has wide discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of discretion, a sentence will not be set aside as excessive. Id., citing State v. Square, 433 So.2d 104 (La.1983). As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802.

. La. C.E. art. 514 provides:
The United States, a state, or subdivision thereof has a privilege to refuse to disclose, *704 and to protect another from required disclosure of, the identity of a person who has furnished information in order to assist in an investigation of a possible violation of a criminal law.
A. General rule of privilege. The United States, a state, or subdivision thereof has a privilege to refuse to disclose, and to protect another from required disclosure of, the identity of a person who has furnished information in order to assist in an investigation of a possible violation of a criminal law.
B. Who may claim the privilege. The privilege may be claimed by the prosecuting authority or an appropriate representative of the public entity to which the information was furnished.
C. Inapplicability of privilege. No privilege shall be recognized if:
(1) The informer appears as a witness for the government and testifies with respect to matters previously disclosed in confidence.
(2) The identity of the informer has been disclosed to those who have cause to resent the communication by either the informer or the prosecution, or in a civil case, a person with authority to claim the privilege.
(3) The party seeking to overcome the privilege clearly demonstrates that the interest of the government in preventing disclosure is substantially outweighed by exceptional circumstances such that the informer’s testimony is essential to the preparation of the defense or to a fair determination on the issue of guilt or innocence.
(4) In a criminal case, the prosecution objects.
This privilege is founded upon public policy that seeks to further and protect the public interest and law enforcement by encouraging people to supply information to the police by protecting their anonymity. Roviaro v. U.S., 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Mendenhall, 40,986 (La. App.2d Cir.2/7/07), 948 So.2d 1255. Louisiana has a strong public policy in favor of protecting the identity of confidential informants. The defendant bears the burden of showing exceptional circumstances which would require divulging a confidential informant's identity; the trial court has much discretion in deciding whether disclosure is warranted. State v. Robinson, 46,091 (La.App.2d Cir.4/20/11), 63 So.3d 1113, 1124, writ denied, 2011-0901 (La. 11/23/11), 76 So.3d 1148, and writ denied, 2011-1016 (La. 11/23/11), 76 So.3d 1149.
In Roviaro, supra, the Supreme Court held that courts considering whether to disclose the identity of a confidential informant must examine "the crime charged, the possible defenses, the possible significance of the informer’s testimony, and other relevant factors.” Id. at 62, 77 S.Ct. 623. The Fifth Circuit has directed courts to focus on three issues: (1) whether the informant participated in the criminal activity, (2) the relationship between the defendant’s asserted defense and the probable testimony of the informant, and (3) the government's interest in nondisclosure. United States v. Cooper, 949 F.2d 737 (5th Cir.1991), cert. denied, 504 U.S. 975, 112 S.Ct. 2945, 119 L.Ed.2d 569 (1992).

. Counsel, in argument, as part of his trial strategy, asked the jury to find the defendant guilty of possession, at most, or not guilty.

. As a general rule, a claim of ineffective assistance of counsel is more appropriately raised in an application for post-conviction relief ("PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. A motion for new trial is also an accepted vehicle by which to raise such a claim. Here, since the record is sufficient, we will resolve this on direct appeal in the interest of judicial economy. State v. Cox, 44,878 (La.App.2d Cir.12/9/09), 26 So.3d 929, writ denied, 2009-2829 (La.6/18/10), 38 So.3d 320. A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient, and that counsel’s deficient performance prejudiced his defense. Strickland, supra. To establish the prejudice prong of the test, defendant must show that, but for counsel’s unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d J/74, writ denied, 95-1398 (La. 11/3/95), 662 So.2d 9. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991).